MILLER and GREEN v. W. T. JUSTICE.

*Decree—Power of Court to Change.*

An interlocutory decree may be modified or rescinded during the pendency of the suit, upon sufficient grounds shown, to meet the justice and equity of the case.

(*Worth* v. *Gray*, 6 Jones Eq., 4; *Ashe* v. *Moore*, 2 Mur., 383; *Shinn* v. *Smith*, 79 N. C., 310, cited and approved.)

MOTION heard at Special Term, 1881, of BUNCOMBE Superior Court, before *McKoy, J.*

The defendant appealed.

*Messrs. C. A. Moore* and *H. B. Carter*, for plaintiff.
No counsel for defendant.

ASHE, J. The action in which the motion is made, was brought by the plaintiffs, J. M. Miller and William Green, against W. T. Justice and David P. Welch, to the spring term, 1879, of Buncombe superior court. The parties above named, on the 21st day of August, 1876, entered into a co-partnership in writing to build a saw and grist mill on a certain creek in the county of Buncombe, on a lot of land belonging equally to the parties, without limit to the time of its continuance; each of them by the said articles of co-partnership agreeing to furnish one-fourth of the capital stock, either in money or labor, necessary to complete said mills, and share equally in the profits and losses according to their respective shares.

Welch, not long after the formation of the co-partnership, sold out his interest to J. M. Miller, who thereby became the owner of one-half of the stock of the company.

After commencing work on the mills, the partners soon disagreed about the advancements which each had or should

make according to the " articles of partnership," to carry on the work.   From misunderstandings, bad feelings and mutual complaints ensued.   The one side charged the other with fraud, keeping false books, applying the partnership property to private uses, and obstructing the other members in the enjoyment of the property ; while the latter charged the others with withholding their stipulated contributions to the construction of the mills, and misappropriation of the profits to private purposes.   There were criminations and recriminations, and things went from bad to worse until the parties came to blows, and each side charged the other with continued threats of violence.   So that a state of things was brought about wholly destructive of that unanimity and consort of action which is so essential to the success of a joint enterprise.

All of which resulted in a dissolution of the co-partnership by the plaintiffs, by their giving to the defendant the following notice, dated February 10th, 1879 :

*To W. T. Justice :*   You are hereby notified of our withdrawal from the partnership in the mill property jointly owned by us with yourself.   You are also further notified that it is our intention to bring a suit against you for a settlement and winding up our said partnership at the very earliest practicable moment.   (Signed J. M. Miller and Wm. Green.)

Very soon thereafter this action was brought and the pleadings alleged the facts substantially as above recited.

The plaintiffs in their complaint prayed that an account might be taken, and that the property might be sold under the direction of the court.   The defendant, after recriminations upon the plaintiffs as aforesaid, and denying the charges of keeping false books or other fraudulent practices, consented to an account, and a sale of the property after the

account should be taken and the report of the commissioner confirmed.

In pursuance of this consent of parties, His Honor, Judge Shenck, at spring term, 1880, of said court, rendered the following decree: "This action coming on to be heard, and being heard, it is by consent of parties referred to Messrs. A. T. Simmons and J. E. Rankin with power to choose a third person to act with them in case they cannot agree between themselves, to take and state an account of the partnership dealings between the plaintiffs and defendant in this action, and report the same to the next term of this court. That they shall show in their said report the amount due from each to the other, together with what interest each partner has in the partnership property. It is also by consent adjudged and decreed that the land and mills mentioned and described in the pleadings in this action, be sold at public sale at the court house door in the town of Asheville and county aforesaid, after thirty days' advertisement at the said court house door and at three or four other public places, for ten per cent. of the bid in cash, the remainder at six and twelve months' credit, secured by notes and good security, with interest from date of sale till paid, in two equal instalments. Title to be retained until the purchase money is paid. That Foster A. Lindly be and he is hereby appointed a commissioner to make such sale, according to the terms as hereinbefore mentioned, and to report his proceedings to the next term of this court. The parties hereto shall be allowed to purchase at said sale, in case they or either of them may see proper to do so. And they or either of them shall be entitled to a credit on the bid so made, of the amount to be due them or either of them, upon the account to be taken by the referee above named, when the same is confirmed by the court; and it is further adjudged and decreed that the costs of this action shall be equally paid by the parties hereto, excepting D. P. Welch, who is to pay no costs. The sale

not to take place until the report of the referees is filed and confirmed by the court."

No account was taken by the referees. It appears from the affidavit of J. E. Rankin, one of the referees, that they never appointed but one day for taking the account, which was agreed to by all the parties, and that was fixed upon by their consent, and on said day the parties met and notified the referees that they had by consent postponed the taking the account, and thereupon the referees caused it to be postponed, and had never since been applied to by either side to set a day for taking the same.

Each party laid the fault at the door of the other, but it was needless to inquire who was to blame for the miscarriage in taking the account.

The plaintiffs moved the court to order a sale without waiting for the report of the referees, upon the ground that the property was daily decreasing in value for the want of attention, and its exposure to the weather in consequence of its incomplete condition, and the insufficiency of the profits to meet the needful repairs.

They proved these facts by the testimony of several witnesses, and it was not denied by the defendant, Justice.

Green, one of the plaintiffs, stated in his affidavit filed in support of the motion for an immediate sale, that the property was, and had been for some time in a very bad condition on account of the grist and saw mill fixtures being exposed to the inclemency of the weather, there being no roof over either mill except a few loose planks that partially covered them.

The affidavit of S. F. Young states that he was well acquainted with the property in question, and that there was no shelter to protect the same from the weather except a few loose planks immediately over said mills, and that on account of the condition of the property, in his opinion,

the rents and profits were insufficient to pay for repairs and keep the mills in running order.

D. P. Welch, who was originally one of the stockholders, testified that the property was exposed to the inclemency of the weather and in such a state of dilapidation that in his opinion the interest of all parties concerned would be promoted by an immediate sale of the same; that the mills were only covered with a few loose planks, and that in his opinion the rents and profits of the property in its then condition would not keep the same in repair and in running order.

The affidavit of the plaintiff, Miller, was to the same effect as to the constant deterioration in value of the property, in consequence of its roofless and exposed condition.

Upon the motion of the plaintiffs and consideration of the facts set forth in the above affidavits, which were uncontradicted, His Honor, Judge McKoy, at the special term, 1881, of the superior court of Buncombe county, ordered and decreed as follows: " Upon notice it is ordered that the sale of the premises described in the pleadings be made upon the terms and conditions of the decree of sale hereinbefore filed, as soon as may be, according to the requirements of said decree, and that the said sale do not await the taking of the account between the parties, and that the funds arising from said sale be held subject to the said account."

This decree was excepted to by the defendant, Justice, upon the ground the court had no power to change or modify the decree rendered in the case at the spring term, 1880. But the decree was interlocutory, and it was clearly in the power of the court to modify it at any time to meet the justice and equity of the case, upon sufficient grounds shown for the same. In *Worth* v. *Gray*, 6 Jones Eq., 4, it is held: " The orders and decrees of a court of equity are not necessarily absolute, but may be moulded and shaped during the pendency of the suit to meet the exigence of each par-

ticular case; and in *Ashe* v. *Moore,* 2 Mur., 483, it was decided that every order made in the progress of a cause, may be rescinded or modified upon a proper case being made out. To the same effect is *Shinn* v. *Smith,* 79 N. C., 310.

The affidavits laid before Judge McKoy in support of the motion for an order of immediate sale of the partnership property, were amply sufficient to warrant the modification of the decree of spring term, 1880.

There is no error. Let this be certified to the end that the superior court of Buncombe may proceed with the sale of the property described in the pleadings, without further delay, upon the terms prescribed in said decree, and that the account may be taken as the court may direct.

No error. Affirmed.